THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>THE KANE CAPITAL INVESTMENT GROUP, LLC and AMRIT JASWANT SINGH CHAHAL,<br><br>　　　　　　Defendants. | Case No. **1:18-cv-00422**<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS** |

Plaintiff Commodity Futures Trading Commission ("Commission") alleges as follows:

### I.　　INTRODUCTION

1.　From at least January 1, 2015, through December 31, 2017 (the "Relevant Period"), Amrit Jaswant Singh Chahal ("Chahal"), individually and as founder and principal of The Kane Capital Investment Group, LLC ("Kane Capital"), (together, "Defendants") fraudulently solicited and misappropriated more than $1,200,000 from approximately fifty members of the public ("pool participants") in connection with a pooled investment vehicle trading commodity futures contracts, in violation of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1-27f (2012), and its implementing regulations ("Regulations"), 17 C.F.R. pt. 1.1-190 (2017).

2.　Contrary to Defendants' representations that they were profitably trading pool participants' funds, Defendants incurred significant losses trading E-mini NASDAQ 100 (NQ), E-mini S&P 500 (ES), Cboe Volatility Index (VX), and NYMEX WTI Light Sweet Crude Oil (CL) futures contracts, among others. As losses mounted, Defendants created a mirage of

profitability by making material misrepresentations and omissions to pool participants and by doctoring trading account statements to fraudulently reflect profits that did not exist.  Defendants knowingly made these material misrepresentations and omissions to lure new pool participants into their fraudulent scheme and to prevent existing pool participants from discovering Defendants' unprofitable trading and misappropriation.

3. While Defendants represented to pool participants that all funds deposited with Defendants would be used for trading on pool participants' behalf, Defendants fraudulently misappropriated pool participants' funds for Defendants' benefit, including by paying Chahal's own personal expenses, such as his rent and utility bills.  To conceal their fraud and bolster the mirage of profitability, Defendants diverted the principal deposits of new pool participants to earlier-in-time pool participants in the manner of a Ponzi scheme.  In committing these acts of misappropriation, Defendants commingled pool participants' funds with Defendants' own personal funds.

4. By virtue of this conduct, and as more fully set forth below, Defendants have engaged, are engaging, and/or are about to engage in acts and practices in violation of Sections 4b(a)(1)(A)-(C), 4m(1), and 4$o$(1)(A) and (B) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6m(1), 6$o$(1)(A), (B) (2012), and Regulations 4.20(c) and 4.41(a), 17 C.F.R. §§ 4.20(c), 4.41(a) (2017).

5. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to permanently enjoin Defendants from further violations of the Act and Regulations and to seek civil monetary penalties and ancillary relief, including, but not limited to, trading and registration bans, restitution, and disgorgement.

## II.     JURISDICTION AND VENUE

6. This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S.

district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act in the proper district court of the United States whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.  Venue lies properly in this District pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants reside in, transacted business in, or committed acts and practices in violation of the Act and Regulations within this District.

### III.     PARTIES

7.     **Plaintiff Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act and Regulations.  The Commission maintains its principal office at 1155 21st Street N.W., Washington, DC 20581.

8.     **Defendant The Kane Capital Investment Group, LLC** is a Virginia limited liability company that Chahal organized on December 14, 2014.  Until February 16, 2016, Kane Capital identified its principal place of business as an office in Fairfax, Virginia.  On February 16, 2016, Chahal changed Kane Capital's principal place of business to the Fairfax, Virginia residence of a member of Chahal's family.  On February 28, 2018, Chahal changed Kane Capital's principal place of business to Chahal's Fairfax, Virginia residence.  Between February 28, 2016, and March 2, 2017, Kane Capital held National Futures Association ("NFA") Pool ID P111311, which identified Kane Capital as a commodity pool exempt from Commission registration pursuant to Regulation 4.13(a)(1), 17 C.F.R. § 4.13(a)(1) (2017).  On March 2, 2017,

NFA withdrew Kane Capital's exemption because Kane Capital failed to affirm its exempt status.

9.     **Defendant Amrit Jaswant Singh Chahal** is an individual who resides in Fairfax, Virginia. Chahal is the President, Chief Executive Officer, and Manager of Kane Capital. On December 14, 2014, Chahal organized Kane Capital by filing articles of organization and related papers with the Commonwealth of Virginia State Corporation Commission. On July 15, 2015, Chahal opened TD Ameritrade futures trading account *N499 in the name of The Kane Capital Investment Group and identified himself as the "President, CEO" of Kane Capital. Chahal has never been registered with the Commission in any capacity.

### IV.     FACTS

A.     <u>Operation of Kane Capital</u>

10.    During the Relevant Period, Chahal used Kane Capital as a vehicle to fraudulently solicit and misappropriate more than $1,200,000 from approximately fifty pool participants comprised of Chahal's family members, friends, acquaintances, and members of the public. At Chahal's direction, pool participants transferred funds via check, wire, and electronic transfer to bank accounts Defendants controlled, including Wells Fargo, N.A. ("Wells Fargo") accounts *6437 and *2672, which Chahal established in the name of Kane Capital Investment Group.

11.    During the Relevant Period, Chahal opened several commodity futures trading accounts (collectively, the "Trading Accounts"), including Interactive Brokers ("IB") account *4816 and TD Ameritrade ("TD") account *N499, both in the name of Kane Capital, and TradeStation Securities ("TSS") account *8881, in Chahal's own name. At all times, Defendants operated and controlled the Trading Accounts.

12.    The account opening documents for IB futures trading account *4816 identified the "Type" of account as a "Pool" account.

13. On September 21, 2016, Chahal fraudulently opened online bank account *6864 with Ally Bank in the name of a person identified here as P.C. In May 2017, Chahal fraudulently opened online bank account *7334 with Ally Bank in the name of a person identified here as M.T. (together with account *6864, the "Ally Accounts"). Neither P.C. nor M.T. authorized Chahal to open bank accounts in their names, and neither was aware that Chahal had done so. Chahal used the Ally Accounts to move funds between Kane Capital and his personal bank accounts, to misappropriate pool participants' funds for Defendants' own use, and to make Ponzi scheme-like payments to certain pool participants. At all times, Defendants operated and controlled the Ally Accounts.

14. During the Relevant Period, Defendants maintained a public website accessible at http://www.kanecapitalgroup.com (the "Kane Capital Website"), which they used to solicit new pool participants and to communicate with existing pool participants. At all times, Defendants operated and controlled the Kane Capital Website.

15. The Kane Capital Website contained a client portal that allowed pool participants to log in and view their account information, including the balances held in their Kane Capital accounts.

16. During the Relevant Period, Defendants maintained a public profile for Kane Capital Group on the LinkedIn.com social media website (the "LinkedIn Page"), which they used to solicit new pool participants to transfer funds to Defendants. At all times, Defendants operated and controlled the LinkedIn Page.

17. During the Relevant Period, Kane Capital was a Commodity Pool as defined in Section 1(a)(10) of the Act, 7 U.S.C. § 1(a)(10) (2012), because Kane Capital was an investment

trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests, including commodity futures contracts.

18.     During the Relevant Period, Chahal, without being registered with the Commission, acted as a Commodity Pool Operator ("CPO"), as that term is defined in Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), by soliciting, accepting, and receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures contracts.

B.      Defendants' Fraudulent Scheme

19.     Defendants' fraudulent scheme preyed on pool participants by convincing them that Defendants were earning significant profits by using pool participants' funds to trade commodity futures contracts. Enticed by Defendants' false assertions of profitability, pool participants transferred at least $1,200,000 to Defendants via checks, wires, and electronic transfers.

20.     To execute the fraudulent scheme, Chahal, as an agent or employee of Kane Capital, solicited family members, friends, and acquaintances residing in Virginia and New Jersey, among other states, in person, via telephone, e-mail, the Internet, and word-of-mouth, to transfer funds to bank accounts under Defendants' control.

21.     Once pool participants' funds cleared Defendants' bank accounts, Defendants transferred a portion to the Trading Accounts, through which Defendants placed trades in NQ, ES, VIX, and CL futures contracts, among others. Defendants misappropriated the remaining funds for their own use, and to make Ponzi scheme-like payments to certain pool participants.

22. Defendants' trading was unprofitable and produced severe losses for pool participants. For example, in 2015, Defendants placed approximately $207,000 of pool participants' funds in TD account *N499. Defendants placed losing futures trades in TD account *N499, causing its value to plummet by approximately 86% in 2015. Similarly, in 2016, Defendants' unsuccessful futures trading in TD account *N499 caused the account to lose 98% of its $20,000 in net deposits that year.

23. Throughout the Relevant Period, rather than disclose the trading losses, Defendants made material misrepresentations and omissions to pool participants in person, via telephone, e-mail, the Kane Capital Website, and the LinkedIn Page. Chahal also manufactured the appearance of profitability by using a .pdf editing tool to doctor account statements for the purpose of hiding losses and falsely representing profits.

C. <u>Material Misrepresentations, Omissions, and Falsified Account Statements</u>

24. During the Relevant Period, Defendants willfully and knowingly made material misrepresentations and omissions to pool participants to solicit pool participants to transfer funds to Defendants, to conceal Defendants' futures trading losses, and to prevent pool participants from detecting Defendants' misappropriation of pool participants' funds.

25. Defendants made the following material misrepresentations to pool participants, among others:

   a. On November 6, 2017, Chahal falsely represented to a pool participant during a telephone discussion that Defendants' annual trading returns averaged between 28% and 34% per year, and sometimes higher. This statement was materially false and fraudulent because Chahal knew at the time that Defendants' trading was actually unprofitable and had generated significant losses.

  b. During the same telephone discussion referenced above, Chahal represented to the pool participant that Kane Capital was managing more than $5 million in pool participants' funds. This statement was materially false and fraudulent because Chahal knew at the time that Kane Capital managed far less than $5 million in pool participants' funds.

  c. The Kane Capital Website falsely suggested that Defendants were achieving "Rapid Investment Growth," and falsely stated that "Kane Capital Group uses the latest software to achieve the highest possible profit from each investment." The Kane Capital Website further stated, "Our investors are able to gain profit from almost any market condition." These statements were materially false and fraudulent because Defendants knew that Kane Capital's futures trading was unprofitable during the Relevant Period.

  d. The Kane Capital Website also stated, "each of our investments are carefully reviewed by industry experts." This statement was materially false and fraudulent because Defendants knew that industry experts did not review Kane Capital's investments.

  e. The LinkedIn Page identified the "Size" of Kane Capital as "51-200 employees." This representation was materially false and fraudulent because Defendants knew that Kane Capital did not have 51-200 employees, but rather was a one-person operation managed and controlled by Chahal.

26. Defendants made the following material omissions to pool participants, among others:

a. In soliciting new pool participants and in communicating with existing pool participants, Defendants did not disclose that pool participants' funds were misappropriated to pay Chahal's personal expenses and were diverted to make Ponzi scheme-like payments to certain pool participants.

b. In communicating with existing pool participants, Defendants did not disclose that purported trading returns provided to pool participants were actually the misappropriated principal deposits of other pool participants.

c. In soliciting new pool participants and in communicating with existing pool participants, Defendants did not disclose that Chahal was not registered with the Commission as a CPO, as required by federal law.

27. In addition to making material misrepresentations and omissions to pool participants, Defendants also falsified account statements to conceal losses and create the illusion of profitability. As Defendants' trading losses mounted, Chahal used a .pdf editing tool to doctor account statements for the purpose of making Kane Capital appear profitable. Defendants then uploaded the falsified account statements to the Kane Capital Website so that pool participants would see the doctored statements when they logged into the client portal. Chahal also provided pool participants with falsified account statements in person and/or via e-mail when pool participants requested their Kane Capital statements.

D.  Misappropriation and Commingling

28. During the Relevant Period, Defendants willfully and knowingly misappropriated pool participants' funds. Defendants misappropriated funds entrusted to them by transferring pool participants' deposits from the Trading Accounts to Chahal's own personal bank accounts,

including Wells Fargo account *3855, as well as the fraudulently-opened Ally Accounts, which Defendants at all times operated and controlled.

29. By transferring pool participants' funds into Chahal's personal bank accounts, Defendants commingled pool participants' funds with Chahal's own personal funds.

30. After Defendants transferred pool participants' funds to Chahal's personal bank accounts and the Ally Accounts, Chahal withdrew pool participants' funds for his own personal use, including to pay his rent, utility, and credit card bills.

31. During the Relevant Period, Defendants also misappropriated pool participants' deposits by transferring funds from the Trading Accounts to Kane Capital's bank accounts, including Wells Fargo accounts *6437 and 2672. After pool participants' funds were released into Kane Capital's bank accounts, Defendants withdrew them to pay Chahal's personal expenses and to make Ponzi scheme-like payments to certain pool participants.

32. The pool participants who most benefited from Defendants' Ponzi scheme-like payments were family members and friends of Chahal, as well as corporations they controlled.

33. Defendants did not disclose to pool participants that their funds would pay Chahal's personal expenses, be diverted to other pool participants, or be used for anything other than trading in the commodity futures markets for the benefit of pool participants.

## V. STATUTORY AND REGULATORY VIOLATIONS

### COUNT ONE

**FRAUD IN CONNECTION WITH COMMODITY FUTURES CONTRACTS**
**Violations of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2012)**

34. The allegations set forth in the foregoing paragraphs are re-alleged and re-incorporated herein by reference.

35. Section 4b(a)(1)(A)-(C) of the Act makes it unlawful:

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

36. As alleged herein, Defendants violated Section 4b(a)(1)(A)-(C) of the Act by cheating or defrauding, or attempting to cheat or defraud, other persons; issuing or causing to be issued false reports, statements, and records; and willfully deceiving or attempting to deceive other persons in connection with the offering of, or entering into, the commodity futures transactions alleged herein, by, among other things: (i) fraudulently soliciting pool participants and prospective pool participants by making material misrepresentations and omissions about Defendants' commodity futures trading abilities and profits and Defendants' use of deposited funds; (ii) misappropriating pool participants' funds; and (iii) creating false reports, statements, and records in the form of doctored account statements.

37. Defendants engaged in the acts and practices alleged above using instrumentalities of interstate commerce, including but not limited to: interstate wires for transfers of funds, telephones, facsimile machines, e-mail, websites, and other electronic communication devices.

38. Defendants engaged in the acts and practices alleged above knowingly, willfully, or with reckless disregard for the truth.

39. Chahal controlled Kane Capital, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Kane Capital to commit the acts and omissions alleged herein. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Chahal is liable as a controlling person for Kane Capital's violations of 4b(a)(1)(A)-(C) of the Act).

40. Chahal acted within the course and scope of his employment, agency, or office with Kane Capital. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2017), Kane Capital is liable as principal for Chahal's violations of Section 4b(a)(1)(A)-(C) of the Act.

41. Each act of fraudulent solicitation, misappropriation, and false report, statement, or record, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A)-(C) of the Act.

## COUNT TWO

### FRAUD BY A COMMODITY POOL OPERATOR
**Violations of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2012), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2017)**

42. The allegations set forth in the preceding paragraphs are re-alleged and re-incorporated herein by reference.

43. Section 4*o*(1)(A) and (B) of the Act makes it unlawful for a CPO to:

> by use of the mails or any other means or instrumentality of interstate commerce, directly or indirectly – (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

44. Regulation 4.41(a) makes it unlawful for any CPO, or any principal thereof, to publish, distribute, or broadcast, whether by electronic media or otherwise, any report, letter, circular, memorandum, publication, writing, advertisement, or other literature or advice that (1) employs any device, scheme, or artifice to defraud any participant or client or prospective participant or client; or (2) involves any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or client or any prospective participant or client.

45. As alleged herein, Kane Capital acted as a Commodity Pool within the meaning of Section 1(a)(10) of the Act, 7 U.S.C. § 1(a)(10) (2012), because Kane Capital was an investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests, including commodity futures contracts.

46. As alleged herein, Chahal, without being registered with the Commission as required, acted as the CPO of Kane Capital within the meaning of Section 1a(11) of the Act, 7

U.S.C. § 1a(11) (2012), by soliciting, accepting, and receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures contracts.

47. Chahal violated Section 4$o$(1)(A) and (B) of the Act and Regulation 4.41(a) because he employed or is employing a device, scheme, or artifice to defraud actual and prospective pool participants or engaged or is engaging in transactions, practices, or a course of business which operated or operates as a fraud or deceit upon pool participants or prospective pool participants, including without limitation: misappropriating participants' funds, issuing false account statements, misrepresenting and omitting material facts in solicitations and communications with pool participants, and acting as a CPO without being registered with the Commission, as required by federal law.

48. Chahal acted within the course and scope of his employment, agency, or office with Kane Capital. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2017), Kane Capital is liable as principal for Chahal's violations of Section 4$o$(1)(A) and (B) of the Act and Regulation 4.41(a).

49. Each act of fraudulent solicitation, misappropriation, and false statement or report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4$o$(1)(A) and (B) of the Act and Regulation 4.41(a).

## COUNT THREE

## COMMINGLING PROPERTY
### Violations of Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2017)

50. The allegations in the preceding paragraphs are re-alleged and re-incorporated herein by reference.

51. Regulation 4.20(c) provides, "No commodity pool operator may commingle the property of any pool that it operates or that it intends to operate with the property of any other person."

52. As set forth above, during the Relevant Period, Chahal, while acting as the CPO of the Kane Capital commodity pool, commingled pool participants' funds by failing to maintain separation between his own personal funds and Kane Capital's funds, by combining pool funds with his own personal funds, and by placing pool funds into his own personal bank and trading accounts and into bank accounts that he controlled for his own personal use, including the Ally Accounts.

53. Chahal acted within the course and scope of his employment, agency, or office with Kane Capital. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2017), Kane Capital is liable as principal for Chahal's violations of Regulation 4.20(c).

## **COUNT FOUR**

### **FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR**
### **Violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012)**

54. The allegations in the preceding paragraphs are re-alleged re-incorporated herein by reference.

55. Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), defines a CPO as:

> any person . . . (i) engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or indirectly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—(I) commodity for future delivery, security futures product, or swap

56. Section 4m(1) of the Act makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

57. As alleged herein, during the Relevant Period, Chahal acted as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures contracts.

58. During the Relevant Period, Chahal engaged in the acts and practices described above using the mails and instrumentalities of interstate commerce, including but not limited to: interstate wires for transfers of funds, telephones, facsimile machines, e-mail, websites, and other electronic communication devices, while failing to register with the Commission, in violation of Section 4m(1) of the Act.

59. During the Relevant Period, Chahal was not exempt from registering with the Commission as a CPO.

60. Chahal acted within the course and scope of his employment, agency, or office with Kane Capital. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2017), Kane Capital is liable as principal for Chahal's violations of Section 4m(1) of the Act.

## VI. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its equitable powers, enter:

a. an order finding Kane Capital and Chahal liable for violating Sections 4b(a)(1)(A)-(C), 4m(1), and 4*o*(1)(A) and (B) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6m(1), 6*o*(1)(A), (B) (2012), and Regulations 4.20(c) and 4.41(a), 17 C.F.R. §§ 4.20(c), 4.41(a) (2017);

b. an order of permanent injunction prohibiting Kane Capital and Chahal, and any other person or entity associated with them, from engaging in conduct that violates Sections Sections 4b(a)(1)(A)-(C), 4m(1), and 4*o*(1)(A) and (B) of the Act and Regulations 4.20(c) and 4.41(a).

c. an order of permanent injunction prohibiting Kane Capital and Chahal, and any other person or entity associated with them, from, directly or indirectly:

(i) trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

(ii) entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2017)) for their own personal account or for any account in which they have a direct or indirect interest;

(iii) having any commodity interests traded on their behalf;

      (iv)    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

      (v)    soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

      (vi)    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017);

      (vii)    acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2017)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9);

      (viii)    engaging in any business activities related to commodity interests.

    d.    An order directing Defendants, as well as any successors thereof, holding companies, and alter egos, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

    e.    An order directing Defendants, as well as any successors thereof, to make full restitution to every person or entity whose funds they received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

  f. An order directing Defendants, as well as any successors thereof, holding companies, and alter egos, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any pool participants whose funds were received by them as a result of the acts and practices which constituted violations of the Act and Regulations, as described herein;

  g. An order directing each Defendant to pay a civil monetary penalty, to be assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584 (2015), title VII, Section 701, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2017), for each violation of the Act and Regulations, as described herein;

  h. An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

  i. Such other and further relief as the Court deems just and proper.

Dated:  April 11, 2018    Respectfully submitted,

         COMMODITY FUTURES TRADING COMMISSION

         s/ Jonah E. McCarthy
         Jonah E. McCarthy, VA Bar No. 68415
         Daniel J. Grimm, *pro hac vice to be submitted*
         John Einstman, *pro hac vice to be submitted*
         Paul G. Hayeck, *pro hac vice to be submitted*
         Commodity Futures Trading Commission
         Division of Enforcement
         1155 21st Street, N.W.
         Washington, D.C. 20581
         p:  (202) 418-5000
         f:  (202) 418-5523
         DGrimm@cftc.gov
         JMcCarthy@cftc.gov

JEinstman@cftc.gov
PHayeck@cftc.gov

*Attorneys for Plaintiff*