**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THE KANE CAPITAL INVESTMENT GROUP, LLC and AMRIT JASWANT SINGH CHAHAL,<br><br>Defendants. | Case No. 1:18-cv-00422-LMB-JFA<br><br>**CONSENT ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST THE KANE CAPITAL INVESTMENT GROUP, LLC AND AMRIT JASWANT SINGH CHAHAL** |

## I.  INTRODUCTION

On April 11, 2018, Plaintiff Commodity Futures Trading Commission ("Commission") filed a Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations ("Complaint," ECF No. 1) against The Kane Capital Investment Group, LLC ("Kane Capital") and Amrit Jaswant Singh Chahal ("Chahal"), (together with Kane Capital, "Defendants") pursuant to Section 6c of the Commodity Exchange Act ("Act"), 7 U.S.C. § 13a-1 (2012).

## II.  CONSENTS AND AGREEMENTS

To effect settlement of all charges in the Complaint against Kane Capital and Chahal without a trial on the merits or any further judicial proceedings, Kane Capital and Chahal:

1.      Consent to the entry of this Consent Order for Permanent Injunction and Other Equitable Relief Against The Kane Capital Investment Group, LLC and Amrit Jaswant Singh Chahal ("Consent Order");

2.      Affirm that they have read and agree to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.      Acknowledge service of the Summons and Complaint in this action;

4.      Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to 28 U.S.C. § 1331 (2012), 28 U.S.C. § 1345 (2012), and Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5.      Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1-26 (2012);

6.      Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-l(e) (2012);

7.      Waive:

(a)      Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Commission's Regulations ("Regulations"), 17 C.F.R. pt. 148 (2018), relating to, or arising from, this action;

(b)      Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

      (c)     Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing monetary or any other relief, including this Consent Order; and

      (d)     Any and all rights of appeal from this action;

8.     Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Kane Capital or Chahal now or in the future resides outside the jurisdiction of this Court;

9.     Agree that they will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10.     Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Kane Capital and Chahal shall comply with this agreement, and shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

11.     Admit to all of the findings made in this Consent Order and all of the allegations in the Complaint;

3

12.     Acknowledge that in *United States of America v. Amrit Jaswant Singh Chahal*, Case No. 1:18-cr-00152-LMB (E.D. Va. 2018) (the "Criminal Action"), Chahal pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343 (2018) and securities and commodities fraud in violation of 18 U.S.C § 1348(1) (2018) (ECF. No. 90, entered Nov. 2, 2018), and further acknowledge that in connection with that plea, Chahal admitted the facts provided in the Statement of Facts associated with his Plea Agreement (ECF No. 91, entered Nov. 2, 2018), a copy of which is attached as Exhibit A to this Order. The facts set forth in the Statement of Facts are admitted by Chahal and Kane Capital as if set forth in this Order;

13.     Consent to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agree that they shall be taken as true and correct and given preclusive effect therein, without further proof;

14.     Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a proceeding in bankruptcy or receivership, or a proceeding to enforce the terms of this Order;

15.     Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 48 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside the United States; and

16.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against them in any other proceeding.

4

### III.       FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the

entry of this Consent Order and that there is no just reason for delay. The Court therefore

directs the entry of the following Findings of Fact, Conclusions of Law, permanent

injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012),

as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.      Findings of Fact**

**The Parties to this Consent Order**

17.     Plaintiff Commodity Futures Trading Commission is an independent federal

regulatory agency charged by Congress with the administration and enforcement of the Act and

Regulations. The Commission maintains its principal office at 1155 21st Street N.W.,

Washington, DC 20581.

18.     Defendant The Kane Capital Investment Group, LLC is a Virginia limited liability

company that Chahal organized on December 14, 2014. Until February 16, 2016, Kane Capital

identified its principal place of business as an office in Fairfax, Virginia. Between February 28,

2016, and March 2, 2017, Kane Capital held National Futures Association ("NFA") Pool ID

P111311, which identified Kane Capital as a commodity pool exempt from Commission

registration pursuant to Regulation 4.13(a)(1), 17 C.F.R. § 4.13(a)(1) (2017). On March 2, 2017,

NFA withdrew Kane Capital's exempt status.

19.     Defendant Amrit Jaswant Singh Chahal is an individual who resides in Fairfax,

Virginia. Chahal is the President, Chief Executive Officer, and Manager of Kane Capital. On

December 14, 2014, Chahal organized Kane Capital by filing articles of organization and related

papers with the Commonwealth of Virginia State Corporation Commission. Chahal has never been registered with the Commission in any capacity.

**Operation of Kane Capital**

20.     From at least January 1, 2015, through December 31, 2017 (the "Relevant Period"), Chahal opened several commodity futures trading accounts (collectively, the "Trading Accounts"), including Interactive Brokers ("IB") account *4816 and TD Ameritrade account *N499, both in the name of Kane Capital, and TradeStation Securities account *8881, in Chahal's own name. At all times, Defendants operated and controlled the Trading Accounts.

21.     The account opening documents for IB futures trading account *4816 identified the "Type" of account as a "Pool" account.

22.     On September 21, 2016, Chahal opened online bank account *6864 with Ally Bank in the name of a person identified here as P.C. In May 2017, Chahal opened online bank account *7334 with Ally Bank in the name of a person identified here as M.T. (together with account *6864, the "Ally Accounts"). Neither P.C. nor M.T. authorized Chahal to open bank accounts in their names, and neither was aware that Chahal had done so. Chahal used the Ally Accounts to move funds between Kane Capital and his personal bank accounts, to misappropriate customers' ("pool participants") funds for Defendants' own use, and to make Ponzi scheme-like payments to certain pool participants. At all times, Defendants operated and controlled the Ally Accounts.

23.     During the Relevant Period, Defendants maintained a public website (the "Kane Capital Website"), which they used to solicit new pool participants and to communicate with existing pool participants. At all times, Defendants operated and controlled the Kane Capital Website.

6

24.     The Kane Capital Website contained a client portal that allowed pool participants to log in and view their account information, including the balances held in their Kane Capital accounts.

25.     During the Relevant Period, Defendants maintained a public profile for Kane Capital Group on the LinkedIn.com social media website (the "LinkedIn Page"), which they used to solicit new pool participants to transfer funds to Defendants. At all times, Defendants operated and controlled the LinkedIn Page.

26.     During the Relevant Period, Kane Capital was a Commodity Pool as defined in Section 1(a)(10) of the Act, 7 U.S.C. § 1(a)(10) (2012), because Kane Capital was an investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests, including commodity futures contracts.

27.     During the Relevant Period, Chahal, without being registered with the Commission, acted as a Commodity Pool Operator ("CPO"), as that term is defined in Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), by soliciting, accepting, and receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures contracts.

28.     During the Relevant Period, Chahal was not exempt from registering with the Commission as a CPO.

**Defendants' Fraudulent Scheme**

29.     During the Relevant Period, Chahal used Kane Capital as a vehicle to fraudulently solicit and misappropriate $1,232,510.41 from approximately 50 pool participants for the

purpose of trading E-mini NASDAQ 100 (NQ), E-mini S&P 500 (ES), Cboe Volatility Index

(VX), and NYMEX WTI Light Sweet Crude Oil (CL) futures contracts, among others.

     30.    During the Relevant Period, Defendants willfully and knowingly made material

misrepresentations and omissions to pool participants to solicit pool participants to transfer funds

to Defendants, to conceal Defendants' futures trading losses, and to prevent pool participants

from detecting Defendants' misappropriation of pool participants' funds.

     31.    During the Relevant Period, Defendants made the following material

misrepresentations to pool participants, among others:  (a) that Defendants' annual trading

returns averaged between 28% and 34% per year, and sometimes higher; (b) that Kane Capital

was managing more than $5 million in pool participants' funds; and (c) that "Kane Capital

Group uses the latest software to achieve the highest possible profit from each investment," that

"Our investors are able to gain profit from almost any market condition," and that "each of our

investments are carefully reviewed by industry experts."

     32.    During the Relevant Period, Defendants made the following material omissions to

pool participants, among others:  (a) that Defendants misappropriated pool participants' deposits;

(b) that purported trading returns provided to pool participants were actually the misappropriated

principal deposits of other pool participants; and (c) that Chahal was not registered with the

Commission as a CPO, as required by federal law.

     33.    Once pool participants' funds cleared Defendants' bank accounts, Defendants lost

the majority of the funds through unsuccessful futures trades.  Defendants misappropriated the

remaining funds for their own use and to make Ponzi scheme-like payments to certain pool

participants.

34.     Defendants falsified account statements to conceal losses and create the illusion of profitability.  As Defendants' trading losses mounted, Chahal used a .pdf editing tool to doctor account statements for the purpose of making Kane Capital appear profitable.  Defendants then uploaded the falsified account statements to the Kane Capital Website, where they were visible to existing and prospective pool participants.  Chahal also provided pool participants with falsified account statements in person and/or via e-mail when pool participants requested their Kane Capital statements.

35.     Defendants engaged in the acts and practices alleged above knowingly, willfully, or with reckless disregard for the truth.

**B.    Conclusions of Law**

**Jurisdiction and Venue**

36.     The Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

37.     Venue lies properly in this District pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants reside in, transacted business in, or committed acts and practices in violation of the Act and Regulations within this District.

**Fraud in Connection with Commodity Futures Contracts**
**(Violations of Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2012))**

38.     By performing the acts and omissions set forth in paragraphs 17-35 above,

Defendants violated 7 U.S.C. § 6b(a)(1)(A)-(C) by cheating or defrauding, or attempting to cheat

or defraud, other persons; issuing or causing to be issued false reports, statements, and records;

and willfully deceiving or attempting to deceive other persons in connection with the offering of,

or entering into, commodity futures transactions.

**Fraud by a Commodity Pool Operator**
**(Violations of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A), (B) (2012) and**
**Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2018))**

39.     By performing the acts and omissions set forth in paragraphs 17-35 above,

Defendants violated Section 7 U.S.C. § 6o(1)(A) and (B) and 17 C.F.R. § 4.41(a) by using the

mails or other means or instrumentalities of interstate commerce to directly or indirectly employ

a device, scheme, or artifice to defraud actual and prospective pool participants or engage in

transactions, practices, or a course of business which operated or operates as a fraud or deceit

upon pool participants or prospective pool participants.

**Commingling Property**
**(Violations of Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2018))**

40.     By performing the acts and omissions set forth in paragraphs 17-35 above,

Defendants violated 17 C.F.R. § 4.20(c) by illegally commingling property by transferring pool

participants' funds into Chahal's own personal bank accounts.

**Failure to Register as a Commodity Pool Operator**
**(Violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012))**

41.     By performing the acts and omissions set forth in paragraphs 17-35, Chahal

violated 7 U.S.C. § 6m(1) by, without being registered with the Commission as required, acting

as a CPO by soliciting, accepting, or receiving funds from the public while engaged in a business

that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures contracts.

**Principal and Agent Liability**

42.     During the Relevant Period, Chahal committed the acts and omissions identified in paragraphs 17-35 within the course and scope of his employment, agency, or office with Kane Capital.  Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2018), Kane Capital is liable as principal for Chahal's violations of the Act and Regulations identified in paragraphs 17-35.

43.     During the Relevant Period, Chahal controlled Kane Capital, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Kane Capital to commit the acts and omissions alleged herein.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Chahal is liable as a controlling person for Kane Capital's violations of the Act and Regulations identified in paragraphs 17-35.

44.     Unless restrained and enjoined by this Court, this is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.      PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

45.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendants are permanently restrained, enjoined, and prohibited from directly or indirectly:

a.      cheating or defrauding, or attempting to cheat or defraud, other persons; issuing or causing to be issued false reports, statements, and records; and willfully deceiving or attempting to deceive other persons in connection with the offering of, or

entering into, commodity futures transactions, in violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2012);

b.  using the mails or other means or instrumentalities of interstate commerce to directly or indirectly employ a device, scheme, or artifice to defraud actual and prospective pool participants or engage in transactions, practices, or a course of business which operates as a fraud or deceit upon pool participants or prospective pool participants, in violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A), (B) (2012), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2018); and

c.  commingling property in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2018);

d.  acting as an unregistered CPO by soliciting, accepting, or receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodity futures contracts, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

46.  Defendants are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

b.  Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018)), for their own personal account or for any account in which they a direct or indirect interest;

c.  Having any commodity interests traded on their behalf;

d.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e.     Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and/or

g.     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

## V.     RESTITUTION

47.     Defendants' violations of the Act and Regulations merit the award of restitution. Accordingly, the Court orders Defendants to pay, on a joint and several basis, restitution in the amount of one million, two hundred thirty-two thousand, five hundred and ten dollars and forty-one cents ($1,232,510.41, the "Restitution Obligation"), which is deemed satisfied by the entry of an order in the Criminal Action that requires Chahal to pay a criminal forfeiture judgment equal to or greater than the Restitution Obligation.

## VI.     MISCELLANEOUS PROVISIONS

48.     Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Deputy Director Paul G. Hayeck
> Division of Enforcement
> Commodity Futures Trading Commission
> 1155 21st Street, N.W.
> Washington, DC 20581

Notice to Defendants:

> 4557 Forest Drive
> Fairfax, Virginia 22030

All such notices to the Commission shall reference the name and docket number of this action.

49.     Change of Address/Phone:  Until such time as Defendants satisfy in full their Restitution Obligation as set forth in this Consent Order, Defendants shall provide written notice to the Commission by certified mail of any change to their telephone numbers and mailing addresses within ten calendar days of the change.

50.     Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

51.     Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

52.     Waiver:  The failure of any party to this Consent Order or of any pool participant at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or pool participant at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any

provision contained in this Consent Order shall be deemed to be or construed as a further or

continuing waiver of such breach or waiver of the breach of any other provision of this Consent

Order.

53. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this

action to ensure compliance with this Consent Order and for all other purposes related to this

action, including any motion by Defendants to modify or for relief from the terms of this

Consent Order.

54. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief

provisions of this Consent Order shall be binding upon Defendants, upon any person under their

authority or control, and upon any person who receives actual notice of this Consent Order, by

personal service, e-mail, facsimile, or otherwise, insofar as he or she is acting in active concert or

participation with Defendants.

55. Authority: Chahal hereby warrants that he is President, Chief Executive Officer,

and Manager of Kane Capital, and that this Consent Order has been duly authorized by Kane

Capital and he has been duly empowered to sign and submit this Consent Order on behalf of

Kane Capital.

56. Counterparts and Facsimile Execution: This Consent Order may be executed in

two or more counterparts, all of which shall be considered one and the same agreement and shall

become effective when one or more counterparts have been signed by each of the parties hereto

and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all

parties need not sign the same counterpart. Any counterpart or other signature to this Consent

Order that is delivered by any means shall be deemed for all purposes as constituting good and

valid execution and delivery by such party of this Consent Order.

57.     Contempt:  Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that in any such proceedings they may not challenge the validity of this Consent Order.

58.     Agreements and Undertakings:  Defendants shall comply with all of the undertakings and agreements set forth in this Consent Order.

**IT IS SO ORDERED** on this _20_ day of _June_ .

/s/

Leonie M. Brinkema
United States District Judge

**CONSENTED TO AND APPROVED BY:**

Amrit Jaswant Singh Chahal, individually

Dated: 4/18/19

Amrit Jaswant Singh Chahal, on behalf
of The Kane Capital Investment Group, LLC

Dated: 4/18/19

Christine Ryall
Chief Trial Attorney
Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, DC 20581
(202) 418-5000
cryall@cftc.gov

Dated: June 20, 2019

Approved as to form:

Allison Baker Shealy
Russell D. Duncan
SHULMAN ROGERS
12505 Park Potomac Avenue
Potomac, Maryland 20854

Attorneys for Amrit Jaswant Singh Chahal
and The Kane Capital Investment Group, LLC

Dated: April 23, 2019

17

**CONSENTED TO AND APPROVED BY:**

Jonah E. McCarthy, VA Bar No. 68415
Senior Trial Attorney
Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, DC 20581
(202) 418-5000
JMcCarthy@cftc.gov

Dated: June 20, 2019

*Attorney for Plaintiff*

# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:18-CR-152 |
| | ) | |
| AMRIT JASWANT SINGH CHAHAL, | ) | |
| | ) | |
| Defendant. | ) | |

### STATEMENT OF FACTS

The United States and the defendant, AMRIT JASWANT SINGH CHAHAL, stipulate

that the allegations in Counts Three and Five of the indictment are true and correct. The parties

further stipulate that had the matter gone to trial, the United States would have proven the above

allegations in the Indictment and the following facts beyond a reasonable doubt.

**I.  Factual Background**

1.  The Kane Capital Investment Group, LLC ("Kane Capital") was a limited liability

company formed in the Commonwealth of Virginia on or about December 14, 2014.

2.  Defendant AMRIT JASWANT SINGH CHAHAL ("CHAHAL") owned and was

the registered agent of Kane Capital. CHAHAL made all or substantially all business decisions

on behalf of Kane Capital, and had complete control over all funds invested with Kane Capital.

3.  CHAHAL was a resident of Fairfax, Virginia, within the Eastern District of

Virginia. He managed, directed, and controlled the operations of Kane Capital primarily from

within the Eastern District of Virginia.

1

4.      CHAHAL held out Kane Capital as a private capital investment group specializing in absolute investments and as a company that sought to earn profits and investment returns on behalf of its clients by purchasing, trading, or otherwise investing in commodities for future delivery, in options on commodities for future delivery, and other financial instruments.

5.      CHAHAL maintained a business checking bank account for the Kane Capital Investment Group at Wells Fargo Bank, account number ending in 6437 ("the Kane Capital account"). The account was opened on or about December 15, 2014. CHAHAL was the sole signatory on the account.

6.      TradeStation Securities, Inc. ("TradeStation") was an online broker through which account holders could trade securities, commodities for future delivery, and options on future delivery.

## II.      Criminal Conduct

7.      As described in greater detail below, from in or around 2015 and continuing through at least in or around March 2018, in the Eastern District of Virginia, and elsewhere, defendant AMRIT JASWANT SINGH CHAHAL ("CHAHAL"), having devised and intending to devise a scheme and artifice to defraud and fraudulently obtain money and property from investors and potential investors by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, and signals for the purpose of executing the scheme and artifice.

8.      Additionally, as described in greater detail below, from in or around 2015 and continuing through at least in or around March 2018, in the Eastern District of Virginia, and

2

elsewhere, defendant AMRIT JASWANT SINGH CHAHAL, did knowingly devise and intend

to devise a scheme and artifice to defraud any person in connection with any commodity for

future delivery, and in connection with any option on a commodity for future delivery.

9.      More specifically, it was the purpose of CHAHAL's scheme to obtain and retain

funds from investors in Kane Capital through false and fraudulent representations to investors

and by concealment of material facts. CHAHAL made false and fraudulent representations to

investors about (i) the historical performance of Kane Capital, (ii) the true disposition of funds

investors provided to Kane Capital, (iii) the true status of investors' funds with Kane Capital

relating to commodities for future delivery and options on commodities for future delivery, and

(iv) the source of returns he provided to some investors.

10.     In connection with his representations regarding the historical performance of

Kane Capital, CHAHAL knowingly made false statements to investors and potential investors in

which he substantially overstated the amount of assets under management by Kane Capital. For

example, on or about November 6, 2017, Chahal represented to Investor MAT that Kane Capital

averaged "between like 28% to 30, 34% return per year . . . usually more, but I like to average it

out," and that Kane Capital was then "managing just over $5,000,000." As Chahal knew, these

statements to Investor MAT were false.

11.     In addition, CHAHAL created false and fraudulent statements that he provided to

investors by text message, email, and through the Kane Capital website. These fraudulent

statements led investors to believe falsely that their investments with Kane Capital were

performing well when, as CHAHAL knew, the funds had suffered substantial losses. Some

investors received statements for entirely fictitious accounts that CHAHAL knew never existed.

3

12.     For example, on or about November 14, 2016, Investor MAT invested $30,000 with Kane Capital. CHAHAL never informed Investor MAT that CHAHAL failed to invest MAT's funds. Instead, over the next several months, CHAHAL represented to Investor MAT that his or her investment was performing well. Based on those representations, Investor MAT sent a check to TradeStation Securities in the amount of $150,000, on or about March 24, 2017, to open an account in the name of Investor MAT and his or her spouse. Investor MAT authorized CHAHAL to conduct trades and manage the account on behalf of Investor MAT.

13.     Once the account opened, CHAHAL's trading suffered substantial losses. To conceal the true status of the investments, CHAHAL provided Investor MAT with fake and fraudulent TradeStation documents. Specifically, on or about November 6, 2017, CHAHAL sent two forged documents to Investor MAT from Fairfax, Virginia, within the Eastern District of Virginia.

a.   The first fraudulent document purported to show that Investor MAT's account had a balance of $206,043.63 as of October 27, 2017. As CHAHAL knew, Investor MAT's TradeStation account had an actual balance of $1,043.63 as of October 27, 2017. CHAHAL never informed Investor MAT that he had lost, spent, or misappropriated Investor MAT's funds.

b.   The second fraudulent document purported to be a TradeStation statement for another account that purported to show a balance of $71,077.93 as of October 27, 2017. As CHAHAL knew, that account did not hold funds and thus could not have the purported $71,077.93.

4

14. CHAHAL also concealed that he lacked funds to pay investors when they requested payment by, in some instances, paying out returns to old investors using funds from newer investors. CHAHAL never told the newer investors that a portion of their funds was being used to pay old investors, and CHAHAL never disclosed to old investors that funds they were being paid came, at least in part, from newer investors.

15. For example, on or about August 1, 2017, Investor JSG invested $25,000 with Kane Capital intending those funds to be used solely to make investments on his or her behalf. CHAHAL deposited those funds into the Kane Capital account that same day. By the end of the day, on August 1, 2017, the Kane Capital account had a balance of $27,414.66 (including the $25,000 provided to CHAHAL by Investor JSG). On or about August 2, 2017, CHAHAL wrote two checks to Investor JSC for a total of $15,000 using a portion of the money CHAHAL received from Investor JSG. CHAHAL never informed Investor JSG that he used a portion of his or her money to pay another investor, and he never informed Investor JSC that the "return" Investor JSC received from CHAHAL came in large part from Investor JSG.

16. CHAHAL further removed funds from accounts in his control without the prior knowledge or authorization of his investors.

17. For example, from on or about March 27, 2015, through on or about June 11, 2015, Investor DST provided CHAHAL with an initial investment of $55,000. It was the purpose of this investment for Investor DST to instruct CHAHAL on specific trades to make on Investor DST's behalf and for CHAHAL to keep Investor DST apprised of the status of the trades. Without Investor DST's prior knowledge or approval, CHAHAL spent a portion of Investor DST's funds on his personal expenses and diverted a portion of Investor DST's funds to other

5

accounts in CHAHAL's control. Based on representations CHAHAL made about the success of his trades, Investor DST continued to invest with CHAHAL. On or about October 8, 2015, and October 9, 2015, Investor DST wrote checks totaling $100,000 to Kane Capital which CHAHAL deposited into the Kane Capital account with Wells Fargo on or about October 9, 2015, in McClean, Virginia, within the Eastern District of Virginia. Prior to Investor DST submitting the additional investment for CHAHAL to trade on options and commodities, CHAHAL never disclosed that he had used a portion of Investor DST's funds to pay his own personal expenses.

18.     Subsequently, on or about May 24, 2017, while funds remained in Investor MAT's TradeStation account, CHAHAL opened an account with Ally Bank in the name of Investor MAT and his or her spouse. CHAHAL transferred funds totaling $48,750 from the TradeStation account in the name of Investor MAT to the Ally Bank account.

19.     Subsequently, CHAHAL then transferred money from the Ally Bank account to the Kane Capital account and other bank accounts under the control of CHAHAL for his own personal benefit and use on or about the following dates in the following amounts:

| Date of Transfer | Amount of Transfer |
| --- | --- |
| 5/25/2017 | $9,000 |
| 5/30/2017 | $5,000 |
| 6/2/2017 | $1,500 |
| 6/7/2017 | $1,075 |
| 6/9/2017 | $1,250 |
| 6/15/2017 | $2,500 |
| 7/6/2017 | $1,500 |

6

| 7/18/2017 | $1,500 |
|-----------|--------|
| 7/28/2017 | $2,500 |
| 8/3/2017  | $3,000 |
| 8/7/2017  | $1,000 |
| 8/11/2017 | $3,000 |
| 8/15/2017 | $4,000 |
| 8/28/2017 | $5,000 |

20.     At no point did Investor MAT or his spouse authorize the transfer of funds from their account at TradeStation to other accounts controlled by CHAHAL.

21.     In total, CHAHAL was entrusted with the funds of more than 50 investors.

22.     On January 4, 2018, CHAHAL was interviewed by law enforcement and prepared a handwritten statement. In that statement, CHAHAL admitted that "[r]eporting a profit to [his] clients were [sic] totally and incredibly wrong in every way." He further explained that "[a]t least early to 2016 and all of 2017, I had been lieing [sic] to investors about their returns and lieing [sic] to new clients about my returns and their future profits. I was using new client money to pay former clients who required a withdrawal while still reporting a profit through statements I was creating."

23.     This statement of facts includes those facts necessary to support the plea agreement between CHAHAL and the United States. It does not include each and every fact known to CHAHAL or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. CHAHAL acknowledges that the foregoing

statement of facts does not describe all of CHAHAL's conduct relating to the offenses charged in this case.

      24.    The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

                            Respectfully submitted,

                            G. Zachary Terwilliger
                            United States Attorney

By:                         
                            Matthew Burke
                            Jamar K. Walker
                            Assistant United States Attorneys

8

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, AMRIT JASWANT SINGH CHAHAL, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

10/30/2018

AMRIT JASWANT SINGH CHAHAL
Defendant

I am James R. Tate, the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

10/30/2018

James R. Tate, Esquire
Counsel for Defendant

9